THIS case comes on, upon cross-bills, for the settlement of accounts between two copartners. Upon mere matter of account, it is usual to make a general ° reference to the master. But there arises a question of the proportions to which the partners were respectively entitled. It appeared therefore to me necessary to instructions to the master upon that point, before a reference was ordered, or he would be at a loss how tosíate the accounts.
By the articles of copartnership, dated the 31st July, 1801, Mr. Gibson was to furnish funds to the concern to the amount of 6000Z. and Mr. Broadfootto the amount of 2000Ü.; and Mr. Gibson was to'draw two thirds of the profits, and Mr. Broadfoot one third.
On the 28th of February, 1803, Mr. Broadfoot wrote to Mr. Gibson, claiming a moiety of the profits : and Mr. Gibson,on the 20 th August, 1803, answers the letter, and agrees to the proposition. Mr. Gibson nowhowever insists that the new agreement was entered into by Mm under a mistake, into which he was led by the misrepresentation of Mr. Broadfoot, who had stated to him that he (Mr. G.) had not advanced as much to the capital of the company as had been agreed upon. To this Mr. Broadfoot answers, that no misrepresentation liad been made; for, in fact, Mr. Gibson had not placed in the co-partnership funds the proportion of capital agreed upon, whilst he (Mr. Broadfoot) had complied with the contract.
Much collateral matter, both of evidence and argument, was gone into, which I shall not notice, because unnecessary, in the view which I take of this question : *40 nor *1K*eec* *s ^ necessary, or perhaps practicable, w*fh-in reas°nable limits, to state the whole of the evidence, which really had relation to the principal point. I shall notice an,i refer to the prominent parts of it as I proceed. On a careful examination of the two important letters above mentioned, (of 28th February and 20th August, 1803,) it does appear Mr. Broadfoot did insist upon an equality in the concern, principally though not wholly, on the ground that Mr. Gibson had not placed his stipulated proportion of capital in the funds of the company. He puts it broadly to Mr. Gibson, that he had failed in that respect generally; but he does not in-, that letter make any representation to Mr. Gibson of the state of his private funds in this country. Mr. Gihson in his letter answering the letter of Mr. B. at the distance of nearly six months, and after deliberately consulting with his friend,( Mr. Moffat, explicitly acknowledges that he had failed in complying with his agreement;— and in doing so he makes no reference to any representation of Mr. Broadfoot, respecting the failure of his funds in this country, but attributes his incapacity to comply with the terms to the enormous losses he had sustained, by the ill conduct of the Johnsons. He declares himself perfectly sensible of the justice of Mr. Broad-foot’s demand, and willingly consents that lie should enjoy half the profits of the concern, and to be subject to half the losses.
It is of very great consequence to remarle here, that Mr. Gibson, who received regular accounts of the co-partnership transactions, and transmitted regularly the accounts, acted upon the basis of a mutual and equal interest in the concern, during the whole of the copartnership, which lasted several years. Upon this fact, a very important consideration arises. Suppose the concern had been a losing, instead of being a profitable one, Mr. Broadfoot would not have been at liberty, and Mr. G-. would not in all probability, have been willing to have limited his proportion of loss to one third. Is it equitable then that Mr. Gibson should be at liberty to wait *41 ¿venta, and to admit or reject the equality of interest according to circumstances ? I think not. It would require a very strong case to be made out, of great misrepresentation, evidently leading Mr. Gibson to acqui-escein the proposal of equality of interest, before I could consent to change the ground on which he voluntarily and deliberately placed himself. This leads us to the consideration of the 2d question, whether Mr. Broadfoot did make such representations to Mr. Gibson, of the state of his funds here, as were grossly erroneous, and led him to the acquiescence he so readily gave to Mr. Broadfoot’s proposal ?
It is agreéd by both parties that Mr. Gibson left goods, inventoried on the 31st of July, 1801, at 41971. 8s. 7d. in the hands of Mr. Broadfoot, and that after-wards a ship then valued at 1000Z. (which afterwards when completely repaired and fitted out, sold for 2500Z.) was put by him in the copartnership stock, and that other goods of some value, .though not accurately proved, were also left with Mr. Broadfoot; all which might be said to be not a great deal short of the 6000?. he was to place in the copartnership funds.
Mr. Gibson insists upon it, that he would not have relinquished the advantage he had of a superior interest (2-3) in the concern, unless he had been misled by the information which Mr. Broadfoot erroneously gave him, that the proceeds of these goods were not brought into" the copartnership funds, but were expended in paying his private debts. What is the evidence that such representation was erroneous ? The witnesses say there ‘were some errors, but they were too trivial to aifect this this question.
Mr. O’Hcar who examined the private account of Mr. Gibson, in the book kept for the purpose by Mr. Broad-foot, did it under the direction of Mr. Gibson himself; and he informs us that he could not find errors to a greater amount than $1469, and that he thinks the sum of $955, ought to be deducted, even from that sum; and that whatever errors there were, were comprehended in *42 the balance sheet of M. Gibson’s account transmitted to ^111’ *n Liverpool; notwithstanding which he continued to transmit the accounts, crediting Mr. Broadfoot with a moiety Pr°S^s. Mr. Hagood proved that the private accounts had been sent on the 18th May, 1813, comprizing the transactions from July, 1801, to the 31st 0f Dec. 1802.
It is impossible to pursue here the great chain of evidence, without transcribing the whole of it from my notes. But after the most mature consideration which I have been able to give it does not appear to me that there was any misrepresentation or error which should induce me to set aside the agreement of the parties. The great weight of testimony establishes that Mr. Broad-foot had expended a larger sum in paying the private debts of Mr. Gibson, than the amount of his funds in this country ; so much larger indeed, that if most (if not all) of the items objected to by Mr. Gibson, were conceded, still it would appear that his private funds were exhausted in the payment of his private debts ; and would leave little or nothing to be carried to the copartnership fund. The great weight of testimony founded on the accounts^ shows, that the annual balance of the copartnership accounts, were in favor of Mr. Broadfoot, from the beginning, and generally throughout the continuance of the copartnership, without reckoning his share of the profits.
It must be repeated that the accounts were mutually transmitted, crediting each other with a moiety of the profits. And though Mr. Gibson did complain in his letters of the obscurity of the account of his private affairs transmitted to him, and did object to some of the items, he never once hinted that his objections were of a magnitude to lead Ms mind to suppose himself entitled to rescind the agreement; nor has Mr. Gibson by any subsequent examination been able to shew such errors, as ought to produce that effect.
With these impressions on my mind, I cannot hesit-tate to say that I see nothing to induce me to believe that Mr. Broadfoot made such erroneous representations *43 oftke state of the private funds of Mr» G. as should author-A ize arecision of the agreement undertheletters; and this being my opinion I do not feel myself obliged to travel into the testimony relative to the support given to. the copartnership, by the commercial friends of either party. That was a collateral question which might have been important if the mind had been left in doubt on the other point.
The conclusion to which I have been led, makes it necessary that this case should be referred to the master, to examine and report upon the accounts, on both sides j and that in making his statements he shall credit each of the partners, with a moiety of the profits, and debit him with a moiety of losses.
At the same time I feel it proper to add that I do not think my decision upon this point ought to be considered final; for though much time and pains have been bestowed upon this subject, the opportunity for examining, sifting and comparing the great mass of evidence in these causes was not so great at the trial, nor has it been since, as to authorize implicit confidence in the opinion I have formed. A more deliberate examination before the master may throw new lights on the subject. If therefore in the further process of this cause it should appear that the facts were not fully developed, or the conclusion incorrectly drawn, I consider this question still in some degree open.